UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


NATIONAL FEDERATION OF THE      )
BLIND on behalf of its          )
members and itself, et al.,     )
                                )
        Plaintiffs,             )
                                )Civil Action
v.                              )No. 13-10799-GAO
                                )
HRB DIGITIAL, LLC, et al.,      )
                                )
        Defendants.             )
                                )



BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE


SCHEDULING CONFERENCE


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Monday, November 18, 2013
2:49 p.m.



Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

1 | APPEARANCES:

2 |     BROWN, GOLDSTEIN & LEVY, LLP
       By: Daniel F. Goldstein, Esq.
3 |     120 E. Baltimore Street
       Suite 1700
4 |     Baltimore, Maryland  21201
       - and -
5 |     SUGARMAN, ROGERS, BARSHAK & COHEN
       By: Christine M. Netski, Esq.
6 |     9th Floor
       101 Merrimac Street
7 |     Boston, Massachusetts  02114
       On Behalf of the Plaintiffs

8 |

       MORRISON & FOERSTER LLP
9 |     By: David McDowell, Esq.
       707 Wilshire Boulevard
10 |    Suite 6000
       Los Angeles, California  90017-3543
11 |    On Behalf of the Defendants

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  Next up for a scheduling conference,
 3   National Federation of the Blind versus HRB Digital, LLC,
 4   13-10799.  Would counsel identify yourselves for the record.
 5           MR. GOLDSTEIN:  Yes.  Daniel Goldstein of the
 6   Baltimore, Maryland, firm of Brown, Goldstein and Levy, along
 7   with Chris Netski as local counsel, on behalf of plaintiffs.
 8           MR. McDOWELL:  Good afternoon, your Honor.  David
 9   McDowell on behalf of HRB Digital.
10           THE COURT:  Okay.  Tell me about the claim.
11           MR. GOLDSTEIN:  Yes, your Honor.  This is a claim for
12   injunctive relief against the entities that own and operate a
13   website, H&R Block website, that also offers as a service
14   online tax filing.  And it seeks both under the ADA and under
15   Massachusetts law to require that those be accessible
16   non-visually to those persons who are blind or otherwise have
17   visual impairments.
18           One critical fact about the case is that the -- in
19   September of every year the defendants lock down the site,
20   having prepared the forms that will be made available that
21   coming January.  So to the extent that we want to have relief
22   by January of 2015, in order for my clients to be able to file
23   their 2014 returns online, we will need to seek injunctive
24   relief, and I think probably final injunctive relief, at the
25   latest in mid-June or late June, in order to give the
```

1    defendant, should we succeed, adequate time to comply with any

2    order that the Court might make.

3         I should also add that while we filed this as a

4    potential class action, I've had discussions with Mr. McDowell.

5    If there are no issues raised about the standing of the

6    individual plaintiffs, then I would anticipate amending to drop

7    our class claims because we won't really need them.

8         In addition, sometime next week, I'm told, the Civil

9    Rights Division of the Department of Justice is going to file a

10   motion to intervene and complaint intervention.  William Lynch

11   from the Civil Rights Division is here today in the courtroom.

12   I have been advised by the Department of Justice that whatever

13   schedule is set today they will live with and Mr.

14   McDowell -- in any event, Mr. McDowell and I have been in

15   active discussions with them and among ourselves about what

16   schedule will work.

17        A few things that aren't addressed in our joint

18   statement:  At the end of next week Mr. McDowell is going to

19   tell me whether any of the affirmative defenses in the answer

20   are going to be withdrawn, at which point by agreement I will

21   then have time to decide whether there's any point to -- or

22   reason to file a motion to strike any affirmative defenses.  We

23   had put that off because we've been trying to talk settlement

24   up to this point; we didn't want to clog the Court's docket.

25        With respect to the issue of joinder of parties, there

1    is some open question, perhaps, as to whether the parent

2    holding company, H&R Block, whom we did not name, should be

3    added.  We'd ask that somewhere midway through the discovery

4    period the Court make the deadline for joinder of any

5    additional parties.

6              THE COURT:  Who are the two parties?  I mean, I guess

7    I get HRB Digital, but how about HRB Tax Group, Inc.?

8              MR. GOLDSTEIN:  Mr. McDowell might be better able to

9    explain than I, but as I understand, they share

10   responsibilities both for the website and for the tax

11   services --

12             THE COURT:  I see.

13             MR. GOLDSTEIN:  -- that are offered through the

14   website.

15             THE COURT:  Okay.

16             MR. GOLDSTEIN:  In terms of discovery, I don't think

17   we need to do a lot.  At least from our end, I anticipate a

18   request for production of documents.  I'm sure that

19   Mr. McDowell and I will quickly resolve what a protective order

20   should look like for the defendant's documents.  I'm sure we

21   will also quickly work through any SI protocol issues that

22   there may be.

23             And then other than a request for documents -- we've

24   already done our initial disclosures.  Other than the request

25   for documents, I think we're probably going to want to take a

1   30(b)(6) deposition, we'll want to depose their expert when

2   they name one, and we'll probably have a very lengthy request

3   for admissions.  And that's probably it from our end.

4        We continue to actively talk settlement.  I continue

5   to be very optimistic that we'll get there.  I also think that

6   if we think we need help, we'll be the first to tell you.  And

7   when I say that we -- I mean, the government has been involved

8   in these settlement negotiations.  I think everybody is working

9   through the same sets of issues.  And I'm hopeful that we'll

10  know soon whether we'll get there or not.  But this is a busy

11  time of year for H&R Block as they come up to the end of the

12  year.

13       And other than that -- so the main thing I would ask

14  today is that the Court look at its calendar.  If we had, I'd

15  like to say a day, but just to be safe a day and a half, we

16  could try the entire case either as a preliminary injunction or

17  final injunction or both.  Essentially, I've got two plaintiffs

18  and an expert, and I believe the government will have its own

19  expert.  And that would be it from our end.  And we would be

20  addressing both the liability issues and what relief we think

21  the Court should grant and how practicable that is.

22       So that would be the one thing I would ask.

23       THE COURT:  Are you aware of any similar lawsuits

24  either in this industry or others?

25       MR. GOLDSTEIN:  With another partner of Mr. McDowell's

1    firm, I did sue the Target Corporation in California, and Judge

2    Patel granted our motions for summary judgment.  And

3    thereafter, we were able to work out the relief that has made

4    target.com fully accessible.

5            Ms. Netski was local counsel for the Netflix case in

6    the Western -- in Springfield which shared -- it was not a

7    website case involving the blind, but it did involve the issue

8    of is a website a place of public accommodation and does it

9    require Netflix to caption all of their streaming videos.

10           And Netflix was successful, as I understand it, on the

11   legal issue -- excuse me.  The plaintiffs were successful on

12   the legal issue, and then I believe the matter was resolved.

13   But either Ms. Netski or Mr. McDowell could tell you more about

14   that.

15           I've arrived at a number of agreements without

16   litigation with a number of websites to make them fully

17   accessible, among them eBay, Amazon.  But this one has

18   proceeded to litigation so far.

19           THE COURT:  Just one more, I guess, learning question

20   about the case:  You styled this as the National Federation on

21   behalf of its members --

22           MR. GOLDSTEIN:  Yes.

23           THE COURT:  -- and others similarly situated?

24           MR. GOLDSTEIN:  Right.

25           THE COURT:  If you decide to forgo the class

1  allegations, does the Federation still have an interest in the

2  case or is it just --

3       MR. GOLDSTEIN:  It does, your Honor.  It has -- it has

4  associational standing.  With Title III, we could get into an

5  interesting fight about whether frustration of corporate

6  purpose is a standing that is recognized within Title III, but

7  we don't have to go there.  The National Federation of the

8  Blind is composed of blind people, and so we have associational

9  standing.

10       And this is part of why I also have a class on behalf

11  of the individuals.  If Mr. McDowell and I agree that there is

12  not a fight about associational standing, then I don't need a

13  class.

14       And I neglected to mention, because I'm getting old

15  and my memory is weak, that the first case involving

16  accessibility of websites is one I brought here against America

17  Online in the District of Massachusetts in 1998, but it was

18  very quickly settled, and AOL is fully accessible to the blind.

19       THE COURT:  Okay.

20       MR. McDOWELL:  I think everything you've heard is

21  right.  We've been able to work out all the scheduling issues

22  so far and have a joint proposed schedule.  I don't know that I

23  can say that I think that the trial on the ultimate claim will

24  be that quick, but certainly we can -- we're working toward a

25  schedule that would have that trial date available in that

1   time.

2          THE COURT:  Well, you have a rather expedited

3   discovery proposal which includes experts.  What kinds of

4   experts?  Website experts?  Is that what it's going to be?  I

5   mean, I guess practicability, you mentioned that, and I guess

6   that could be an expertise issue?

7          MR. GOLDSTEIN:  Yes, your Honor.  We anticipate that

8   we would call someone who is familiar with the standards for

9   non-visual access:  How you accomplish them, what the barriers

10  are on this website that make it not accessible, and what kind

11  of programming has to be done to make it accessible, and what

12  kind of work is involved in doing that kind

13  of -- retrofitting's a bit more work than designing something

14  to be accessible in the first place.  It's a little bit like

15  building a skyscraper and then going, "Elevator.  That would

16  have been a good idea."  It's more work and more expensive, but

17  we will have someone who can explain that.

18          And one of the things that I would anticipate is that

19  this would give you an opportunity to see how a blind person

20  accesses the internet, how they get information non-visually.

21  And you would be seeing from the expert both, "Here's how it

22  works when it works, and here's what's happening when it

23  doesn't work."

24          THE COURT:  And you contemplate simultaneous exchange

25  of expert materials?

1          MR. GOLDSTEIN:  I think so.  I mean, at this point I

2    already know who my expert's going to be and I think

3    Mr. McDowell knows who my expert's going to be.  And over a

4    period that preceded filing, we've exchanged a lot of

5    information about what the barriers are and how we think they

6    ought to be fixed and what we think the standards are that a

7    website should meet.  So there's not a lot of mystery left to

8    this case at this point.

9          MR. McDOWELL:  On either side, your Honor.

10          THE COURT:  Right.  Which is, I guess, why I'm a

11    little curious why you even need a day and a half of evidence.

12    I mean, I think this really may come down to legal questions.

13    I don't know how much disputed facts there may be in a case

14    like this.

15          MR. GOLDSTEIN:  There may not be much.  I said a day

16    and a half because too often I have represented to a court that

17    it can be done in a short period of time, and I'd like to

18    preserve my credibility.  I'd much rather -- I do think we

19    could put our entire case in between nine and one, in a day,

20    and that would include the government, I think.  You know, we

21    could get it all in in a half a day and then whatever Mr.

22    McDowell has.

23          I think you're right that the legal argument is

24    probably the more interesting part of this case.  And if we did

25    do it in the format of a trial or an injunction, we certainly

1    should brief it -- I mean, a non-jury case, we should brief it

2    like we were briefing a summary judgment, except I don't think

3    we need to go through all the statement-of-facts kind of stuff

4    that would be required going --

5            THE COURT:  Well, actually, I had been thinking -- you

6    sort of adverted to it by saying you were thinking about a

7    motion to strike affirmative defenses.  I had had it from the

8    other direction, wondering whether the defendant might move on

9    some of the affirmative defenses as a matter of law.  Is that

10   something you're contemplating?

11           MR. McDOWELL:  Yeah, there may be challenges along

12   those lines, particularly as to the standard that should be

13   applied.

14           THE COURT:  So anyway, I want to be clear, I'm not

15   trying to pinch you on availability of time, I'm just not sure

16   how much is going to be necessary.

17           MR. GOLDSTEIN:  No, I quite understand, your Honor.  I

18   think that my only concern is to get this teed up, win or lose,

19   by early summer --

20           THE COURT:  Right.

21           MR. GOLDSTEIN:  -- so that we don't have a puric win

22   and look at another year's delay.

23           THE COURT:  I think that's realistic.

24           But now I think I will just set actually the -- I'll

25   adopt the proposal you have for discovery, which is -- includes

1  the expert discovery and gets us through the end of May,

2  basically.  But I would like to have a conference before the

3  expert disclosures, after all, whatever the fact discovery is.

4  After that's been done, then we'll probably have a pretty good

5  sense of what factual disputes there are that need to be

6  resolved.

7        So March 17th is what you suggest for fact discovery?

8  That's fine.  So let's find something right in that range.

9  Actually, we may even be able to do it on March 17th, a status

10  conference.

11        MR. McDOWELL:  If we could not travel to Boston on

12  St. Patrick's Day, which is also my birthday, I would

13  appreciate putting it off a week.

14        THE COURT:  Okay.  Okay.  How come you're not named

15  "Patrick"?

16        MR. McDOWELL:  Excuse me?

17        THE COURT:  Nothing.  It's your birthday.  I was

18  wondering why you weren't named "Patrick."

19        Anyway, fine.  Do you want to do it the next week?

20  That's fine.

21        MR. McDOWELL:  Thank you, your Honor.

22        MR. GOLDSTEIN:  That's fine with us, your Honor.

23        THE CLERK:  We'll put this on for a status conference

24  on Monday, March 24th, 2014, at two o'clock.

25        THE COURT:  All right.  Any other issues today?

1            MR. McDOWELL:  No, your Honor.

2            MR. GOLDSTEIN:  We would set the trial date at --

3            THE COURT:  Yeah, we can talk about that then.  As I

4    say, you'll have a better idea what needs to be tried after the

5    fact discovery is over.

6            MR. GOLDSTEIN:  All right.  Thank you, your Honor.

7            MS. NETSKI:  Thank you, your Honor.

8            MR. McDOWELL:  Thank you, your Honor.

9            THE CLERK:  All rise.  The Court will be in recess.

10           (The Court exits the courtroom and the proceedings

11   adjourned at 3:05 p.m.)

12

13                   C E R T I F I C A T E

14

15           I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

16   the United States District Court, do hereby certify that the

17   foregoing transcript constitutes, to the best of my skill and

18   ability, a true and accurate transcription of my stenotype

19   notes taken in the matter of Civil Action No. 13-10799-GAO,

20   National Federation of the Blind, et al., v. HRB Digital, et

21   al.

22

23   /s/ Marcia G. Patrisso
     MARCIA G. PATRISSO, RMR, CRR
24   Official Court Reporter

25   Date: 1/27/14